BRYAN SCHRODER
United States Attorney

JENNIFER IVERS
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: jennifer.ivers@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LAQUINTON TYRONE DASHAWN ROBBINS,<br><br>Defendant. | No. 3:19-cr-00118-RRB |

**SENTENCING MEMORANDUM**

The United States recommends imposition of the following sentence:

**INCARCERATION** .................... **60 MONTHS**
**SUPERVISED RELEASE** .................... **3 YEARS**
**SPECIAL ASSESSMENT** .................... **$100**
**RESTITUTION** .................... **N/A**
**FINE** .................... **UNABLE TO PAY**

The recommended sentence is sufficient, but no greater than necessary, to satisfy the sentencing criteria. Defendant Laquinton Robbins shot an unarmed man in the neck in

an elementary school parking lot with children present. This is precisely the kind of incident that federal law seeks to prevent by prohibiting firearms on school grounds.

## FACTS

Surveillance footage from Denali Montessori School shows the entire incident and has been provided as a conventional exhibit. Because watching the video in court may not be feasible under the current circumstances, the United States respectfully asks this Court to review the video prior to sentencing.

The video shows Robbins, in a red hat, arriving at the school with C.H.'s daughter. Exh. 3 at 9:25:45.[1] C.H., in a black hat, is waiting for them, and tries to grab his daughter's hand. *Id.* When Robbins snatches up the girl and takes her inside, C.H. hits Robbins's hat off his head. *Id.* at 9:26:02. Robbins drops off the girl inside, and according to his interview, tells a teacher about the incident. Exh. 6 at 9:26.

About two minutes later, C.H. walks into the school and then back out following Robbins, apparently antagonizing him. Exh. 6 at 9:28; Exh. 3 at 9:28. At some point their roles reverse and Robbins begins following C.H. Exh. 5 at 9:29:04; Exh. 2 at 9:29:07. Both men walk toward Robbins's car, and C.H. prevents Robbins from getting into the driver's seat. Exh. 4 at 9:29:20. Robbins then gets into the passenger seat while C.H. gets into the driver's seat. *Id.* at 9:29:30. According to a witness, Robbins hit C.H., and he is seen retrieving a backpack with his gun. *Id.* a 9:29:30-35.

Both men get out of the car and Robbins reaches into the backpack. *Id.* at 9:29:35.

[1] Cites to Exhibits 1-6 refer to the time of day, located in the bottom center of each exhibit in blue writing.

C.H. starts backing away. *Id.* at 9:29:37. Robbins continues moving toward C.H. for about ten seconds while C.H. is still backing away. *Id.* at 9:29:37-46. C.H. makes no aggressive movements during this time, stepping onto a curb away from Robbins. *Id.* at 9:29:45.

Then Robbins lifts his arm and shoots C.H. from point-blank range:



C.H. falls down and stumbles toward the school. *Id.* at 9:29:47; Exh. 2 at 9:29:53. He eventually makes it into the foyer, but the school has been locked down at this point, so he cannot enter the building. Exh. 6 at 9:30. C.H. sits in the foyer for nine minutes, bleeding profusely, until law enforcement and medics arrive and take him to the hospital. *Id.* at 9:30-39. Meanwhile Robbins puts his gun back into the backpack, gets in his car, and drives away. Exh. 4 at 9:29-30. Robbins returns a minute later, walks up to C.H. who is still bleeding in the foyer, says something, and walks away. Exh. 6 at 9:31:53-9:32:09. Robbins then wanders around until police arrive. Exh. 4 at 9:32-34.

While all this is happening, parents are dropping children off at the school. Exh. 2

at 9:28:35; Exh. 4 at 9:26; Exh. 5 at 9:27-28; Exh. 6 at 9:28-29. Right next to Robbins's car, a man has just exited the school with his four-year-old niece after dropping off another child. Exh. 5 at 9:29:19. They were just feet away from the shooting, yet Robbins was oblivious of their presence. Exh. 4 at 9:29:32. The video shows the uncle pulling the child away from Robbins's car just before the shooting, and she heard, but did not see, C.H. getting shot. *Id.* The man and his niece ran inside the school ahead of C.H. and told school staff to lock down the building:



Exh. 3 at 9:29:58-9:30:04; Exh. 6 at 9:30:04-07. The man was afraid that he would also be shot after witnessing the shooting.

The shooting and lockdown caused trauma for the entire school. PSR Supp. At least

two school staff members saw C.H. bleeding out in the foyer, causing "extreme stress that continued through the school year." *Id.* The school had to add extra security and provide psychological support for students and staff after this traumatic and avoidable shooting. *Id.*

## GUIDELINES CALCULATION

The USPO calculated a total offense level of 28 after cross referencing U.S.S.G. § 2K2.5 (Possession of a Firearm in a School Zone) to § 2A2.1 (Attempted Murder). The United States agrees with this calculation, and this Court should find by clear and convincing evidence that the cross-reference applies.[2]

### *Self-Defense*

Robbins asserts that the cross-reference to Attempted Murder should not apply because he shot victim C.H. in self-defense. The video rebuts this claim. It undisputedly shows C.H. unarmed and walking away from Robbins when Robbins shot C.H. in the neck at point blank range. Exh. 4 a 9:29:46-47. As is frequently the case, the victim here is no angel: C.H. is a convicted sex offender, and he started the confrontation with Robbins. Those facts, however, do not justify Robbins's use of deadly force.

When assessing a claim of self-defense in the context of a cross-reference, federal courts apply the law of the jurisdiction where the crime occurred.[3] Robbins's self-defense claim fails under Alaska law for two reasons: (1) there was no imminent threat, and (2) he used completely disproportionate force.

---

[2] *See United States v. Hopper*, 177 F.3d 824, 833 (9th Cir. 1999) (requiring clear and convincing evidence for a guideline enhancement that has a disproportionate impact on the sentencing range).

[3] *See United States v. Evans*, 883 F.3d 1154, 1159 (9th Cir. 2018).

Under Alaska law, a claim of self-defense must be based on an imminent threat.[4] In *Ha v. State*, for example, the victim had threatened future harm to the defendant, and in response, the defendant hunted down and shot the victim.[5] Although the defendant's fear of future harm may have been reasonable, his response of preemptively shooting the victim was not.[6] In that case, the court favorably cited an Arizona case where the defendant been violently attacked by a group of people.[7] The defendant left, got a gun, returned, and shot at the people who attacked them, even though the people "gave no signal that they intended to renew their attack."[8] The Arizona court ruled that "after a fight has broken off, one cannot pursue and kill merely because he once feared for his life."[9] In *Ha* itself, the court also noted that the defendant had ample opportunity to seek help from law enforcement or others.[10]

Regarding proportionality, a defendant may only use deadly force – like shooting a gun – when it is "necessary for self-defense against imminent death, serious physical injury," or other serious crimes like robbery or sexual assault. Alaska Statute 11.81.335. Alaska courts have observed that "there is considerable authority which holds that it is normally unreasonable to use deadly force, such as a handgun, in self-defense against a

---

[4] *Ha v. State*, 892 P.2d 184, 194 (Alaska Ct. App. 1995); *see also* Alaska Criminal Jury Instruction: "Reasonable Belief," which says the defendant must "actually believe that he is in imminent danger," and that belief must be objectively reasonable.
[5] *Id.* at 191.
[6] *Id.* at 191, 195.
[7] *Id.* at 193 (citing *Arizona v. Buggs*, 806 P.2d 1381 (Ariz. App. 1990)).
[8] *Id.* at 194.
[9] *Id.*
[10] *Id.* at 195.

non-deadly attack."[11] Because "defensive force should be no greater than necessary to avert the danger," the bar for using "extreme force," like shooting someone, is high.[12] A reasonable jury, for instance, might conclude that firing a warning shot was justified, but shooting someone was not.[13] Deadly force is not justified even against a person who is actually violent, but who is not causing or threatening to cause serious physical injury.[14]

Here, Robbins was not facing any imminent threat. As the video shows, C.H. was walking away from Robbins when Robbins shot C.H. in the neck. Exh. 4 at 9:29. The fact that C.H. started the altercation does not change the analysis. As in *Buggs*, C.H. gave no signal that he intended to use force against Robbins and instead began walking away after Robbins pulled out his gun.[15] Robbins also puzzling asserts that C.H. reached for the gun. There is no evidence that C.H. knew Robbins carried a gun or where it was located, but even if this true, any threat posed by C.H. dissipated after Robbins retrieved the gun himself. At that point Robbins had a choice, and he made the choice to shoot C.H. while C.H. was walking away.

Moreover, Robbins's use of force was extremely disproportionate. Even if C.H. was threatening Robbins (based purely on Robbins's after-the-fact, self-serving assertions), there is no dispute that C.H. was unarmed. Shooting an unarmed person can rarely be

---

[11] *Gaona v. State*, 630 P.2d 534, 537 (Alaska Ct. App. 1981).
[12] *State v. Walker*, 887 P.2d 971, 978 (Alaska Ct. App. 1994).
[13] *Id.*
[14] *Odom v. State*, 798 P.2d 353, 355 (Alaska Ct. App. 1990) (upholding guilty verdict where defendant shot a man in the back who has shaking a third person but not causing or threatening serious injury).
[15]

justified as proportional self-defense.[16] This Court should not give much weight to any claim by Robbins claim that he thought C.H. was armed, because in his interview with police after the incident, he said that he did not see C.H. holding or reaching for a weapon. Finally, at no point in the video did C.H. engage in deadly violence – at most, he knocked off Robbins's hat and prevented Robbins from entering his vehicle. Those actions hardly justified a deadly response.[17]

Robbins raises other facts to try to justify his use of deadly force, such as C.H.'s prior sex offense and the status of C.H.'s custody. There is no caselaw to support the notion that Robbins may shoot a person who is backing away from him and does not pose an imminent threat, just because the victim is a sex offender.

Finally, Robbins ignores the many alternatives he could have chosen to avoid this shooting.[18] He chose to carry an unsecured firearm in a backpack while driving around with children, including onto school grounds. After that, Robbins had numerous alternatives short of deadly force. At any point during the altercation, he could have called police. Or he could have sought assistance from school staff before walking back outside and confronting C.H. Or after retrieving the gun, while C.H. was walking away, Robbins could simply have stopped following C.H., returned to his car, and left. There was simply no need to shoot a man in the neck in an elementary school parking lot with bystanders nearby. Instead of his many less violent alternatives, Robbins escalated the situation and

---

[16] *See Walker*, 887 P.2d at 978; *Gaona*, 630 P.2d at 537.
[17] *See Odom*, 798 P.2d at 355.
[18] *See Walker*, 887 P.2d at 978.

shot C.H. His self-defense argument fails.

*Life-Threatening Injury*

Robbins also claims that C.H.'s injuries were not life-threatening. C.H.'s critical care physician, however, described the injury as a "life threatening gunshot wound." Gov. Exh. 7 (sealed medical records) at 11. C.H. spent six days in the hospital. *Id*. at 13. C.H. was shot in the neck and his injuries were life-threatening.

*COVID-19 Variance*

The United States agreed to recommend a two-level variance and low-end sentence if Robbins met the deadlines described in her plea agreement. Doc. 53. Robbins has complied with the agreement, and the United States accordingly recommends a two-level variance.

Subtracting two levels from the USPO's calculation results in a total offense level of 26. The United States agrees with the USPO's calculation that Robbins is criminal history Category I. The resulting guideline range is 63-78 months, above the statutory maximum of 60 months. The United States accordingly recommends a 60-month sentence.

**STATUTORY CRITERIA AND RECOMMENDED SENTENCE**

*Nature and circumstances of the offense*

This offense involves Robbins making a series of poor choices: carrying an unsecured firearm in a vehicle with children, bringing the gun to a school, continuing the confrontation with C.H. instead of walking away or calling police, pursuing C.H. as he was walking away, and ultimately shooting C.H. at point-blank range, despite C.H. posing no

threat. All of this occurred at an elementary school with children nearby.

*History and characteristics of the defendant*

Robbins does not have extensive criminal history, but his one prior conviction was a violent event where he pushed his ex-girlfriend, hitting her head against a pole. PSR ¶ 26. During the investigation, police also learned the Robbins has previously head butted, strangled, and taken her phone to prevent her from calling police. *Id.*

Robbins has performed poorly on pretrial release. Pretrial Services has filed four petitions for action based on Robbins changing residences without approval, repeatedly using marijuana, and failing to return to his residence on time. PSR ¶ 3-5c; Doc. 27, 38, 55, 69. Despite more and more stringent conditions to ensure Robbins's compliance, he has continued to violate conditions of release as recently as January 2021.

Robbins reports good relationships with his family members and consistent employment since 2008. PSR ¶ 34, 45-47.

*Seriousness of the offense, including deterrence and protection of public*

The seriousness of this offense cannot be overstated. This Court should consider the deadly danger Robbins posed, not just to C.H., but to everyone at the elementary school that day. Robbins was oblivious to the presence of children nearby when he shot C.H., and the shooting has caused traumatic consequences for everyone at the school.

This Court should also consider deterrence and protection of the public when determining an appropriate sentence. Robbins demonstrated a lack of self-control when he shot C.H., and his many pretrial release violations show a lack of respect for court orders.

A significant sentence of imprisonment appears to be the only way to protect the public and deter Robbins from committing future violent crimes.

*Rehabilitation*

Robbins has used marijuana daily for most of his life and has struggled to stop, even after multiple court orders. PSR ¶ 42-43, 4-5c. This Court should not, however, impose additional incarceration for purposes of rehabilitation. *Tapia v. United States*, 564 U.S. 319, 321 (2011).

*Sentencing ranges available*

The recommended sentence falls within the available range.

*Policy statements*

The United States is unaware of any pertinent policy statements.

*Need to avoid sentence disparity*

Judge Burgess recently sentenced defendant John-Rexie Lagman to 30 months' imprisonment in a similar case, 3:19-cr-00119-TMB. Lagman and Robbins were charged with the same offenses and entered similar plea agreements. There are significant differences, however, that justify a higher sentence here.

In the Lagman case, the USPO, and ultimately the court, applied a cross-reference to Aggravated Assault instead of Attempted Murder. That case involved a shooting from a further distance, whereas here, Robbins's intent to kill C.H. is apparent from his shooting C.H. in the neck at point-blank range. In that case, the victim stabbed Lagman with a screwdriver shortly before the shooting, and although the court found the shooting was not

in self-defense, that factual difference supports a higher sentence in this case. Here, there is no evidence C.H. posed a similar threat to Robbins at any point during their confrontation, all of which was captured on video. Lastly, Lagman had a high likelihood of rehabilitation: he had no criminal history whatever, let alone a history of violence; was only 22 at the time of shooting; and had no problems on pretrial release. Robbins, by contrast, has a history of violence and has repeatedly violated court orders.

For reference, in the Ninth Circuit, the average sentence for assault is 24 months, for manslaughter is 57 months, and for murder is 168 months.[19]

## CONCLUSION

Laquinton Robbins shot C.H. in an elementary school parking lot without justification. A sentence of 60 months' imprisonment, followed by 3 years of supervised release, is sufficient but not greater than necessary to fulfill the sentencing goals and deter Robbins from future crimes.

RESPECTFULLY SUBMITTED February 10, 2021 at Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

/s Jennifer Ivers
JENNIFER IVERS
Assistant United States Attorney
United States of America

[19] United States Sentencing Commission Statistical Information Packet for 2019, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2019/9c19.pdf.

**CERTIFICATE OF SERVICE**

I hereby certify that on February 10, 2021 a true and correct copy of the foregoing was served electronically on:

Danée Pontious

/s Jennifer Ivers
Office of the U.S. Attorney